GUARDIAN COMPANY *v.* CLEVELAND & COMPANY.

4-7672                                            189 S. W. 2d 650

Opinion delivered October 8, 1945.

*House, Moses & Holmes* and *W. H. Jewell,* for appellant.

*Rose, Loughborough, Dobyns & House,* for appellee.

McHANEY, J.   The principal and most important question presented by this appeal is whether the mort-

gagor or the mortgagee, under the provisions of the deeds of trust here involved, had the primary right and duty to procure fire and other hazard insurance on the houses and other improvements covered by the several deeds of trust under a clause therein requiring such insurance, hereinafter quoted.

In 1941, and subsequently, appellee, Cleveland & Company, a corporation, hereinafter called Cleveland, was engaged in building defense housing units in Little Rock and North Little Rock, which numbered in excess of one hundred. Appellant, The Guardian Company, hereinafter called Guardian, is a corporation engaged in the business of making loans on real estate. Appellant, Smith-Reid-East, is a separate corporation and engaged in the business of writing fire and other hazard insurance on property, although at that time, appellee, Jack C. East, was executive vice-president of Guardian and president of Smith-Reid-East.

At various times during 1941 and 1942 Cleveland borrowed various sums of money from Guardian, at the solicitation of the latter, acting through Jack C. East, to finance the construction of numerous houses in its housing projects. These loans were F. H. A. insured and were secured by separate deeds of trust, on F. H. A. forms, on each house and the lot on which it was built, by Cleveland. These loans were later sold by Guardian to the First National Bank in St. Louis, but it has ever since continued to act as servicing agent for said bank to make collections and remittances, and see after insurance, etc. Insurance on each house was procured by consent or acquiescence of Cleveland by Smith-Reid-East, Jack C. East causing the policies to be written.

On July 31, 1944, Jack C. East resigned from both Guardian and Smith-Reid-East and opened an insurance agency of his own, and thereafter Cleveland, claiming the right so to do under the clause in the deeds of trust, gave the business of writing renewal policies to him. Policies were written through his agency and delivered to Guardian before the expiration date of existing poli-

cies written by Smith-Reid-East, but these policies were refused by Guardian, not because of any objection to the form of the policies, or to the responsibility of the insurance companies, or the amount of insurance, but solely upon the ground that under the clause in the deeds of trust, hereinafter quoted, it had the right to designate the agency to write the insurance and that it had already caused Smith-Reid-East to renew the policies which had been issued and delivered to it.

The deeds of trust required Cleveland to pay to Guardian each month one-twelfth of the estimated annual premium for insurance which created a fund in the hands of Guardian to pay the next annual premium, and was designated in said deeds of trust as a trust fund for such purpose. It is conceded that, at the time Cleveland caused renewal policies to be issued by Jack C. East and delivered to Guardian which it refused to accept, the latter had not charged the account of Cleveland with the premiums on the policies it caused to be issued, since the outstanding policies had not expired. After making three attempts to deliver to Guardian three different sets of renewal policies, all of which were refused for the same reason, and after Guardian had used said insurance trust fund held by it to pay premiums on renewal policies caused to be issued by it, Cleveland brought this action to compel Guardian to cancel the policies so caused to be issued by it, to enjoin it from causing to be issued renewals of existing policies on properties other than those now involved without giving Cleveland an opportunity to procure the insurance and to recover from Guardian a judgment for $633.11, the amount it had paid out for premiums out of the trust fund on policies caused to be issued by it. Guardian answered with a general denial and filed a cross-complaint against Cleveland and Jack C. East. As to East it alleged that by reason of his former position with it and Smith-Reid-East he had acquired confidential information which he and Cleveland were wrongfully using to rewrite all insurance formerly handled by it and Smith-Reid-East and were taking an unfair advantage of them. It prayed they be enjoined

from so doing. Smith-Reid-East intervened, made similar allegations as to Cleveland and East as did Guardian, with a similar prayer.

Trial resulted in a decree for Cleveland, enjoining Guardian from procuring policies on the properties of Cleveland and from charging Cleveland's account for premiums without first giving Cleveland an opportunity to procure such insurance, and dismissing the cross-complaint and intervention of Smith-Reid-East. Guardian was ordered to cancel the policies specifically described in the complaint and cross-complaint. Judgment was rendered against Guardian for $979.29, the amount used by it for premiums to date of trial. This appeal followed.

Appellants first contend that under the deeds of trust the mortgagee, Guardian, had the right to select the agency to write the insurance. The trial court held that Cleveland had this right primarily. This question is to be determined by the language in the deeds of trust. It was stipulated that each loan was secured by a separate deed of trust on the standard F. H. A. form No. 3102B, which contains this provision as to insurance:

"5. That the Party of the First Part will keep the improvements now existing or hereafter erected on the said premises insured as may be required from time to time by the Party of the Third Part against loss by fire and other hazards, casualties, and contingencies, in such amounts and for such periods as may be required by the Party of the Third Part, and will pay promptly when due any premiums on such insurance, provision for payment of which has not been made hereinbefore. All insurance shall be carried in companies approved by Party of the Third Part, and policies and renewals thereof shall be held by it and have attached thereto loss payable clauses in favor of and in form acceptable to the Party of the Third Part."

In this deed of trust the "Party of the First Part" is Cleveland and the "Party of the Third Part" is Guardian. The paragraph just quoted is the 5th in a

series of 10 covenants or agreements set out in the deed of trust which are immediately preceded by this declaration: "And the said party of the first part, in order more fully to protect the security of this Deed of Trust, does hereby covenant and agree as follows:". The express language of said paragraph 5 provides that Cleveland "will keep the improvements now existing or hereafter erected on said premises insured as may be required from time to time" by Guardian. It is Cleveland's duty, not Guardian's, to keep the improvements insured, but in such amounts and for such periods as may be required by Guardian. The provision that insurance shall be carried in companies approved by Guardian necessarily implies that Cleveland shall have the primary right to procure the insurance, as there would be no necessity of approval by Guardian if it had the primary right to procure the insurance and did procure it. As here used the word "approved" means ratified, confirmed, sanctioned, or acquiesced in.

In *Fire Association of Philadelphia* v. *Bonds,* 171 Ark. 1066, 287 S. W. 587, a similar situation existed. Bonds had mortgaged his property to a bank to secure a loan. The mortgage contained a clause requiring Bonds to keep the property insured in a sum sufficient to protect the bank, which he did, delivering the policy to the bank. Just before this policy expired the bank as agent for another company caused a renewal policy to be issued and sent to Bonds, who thereupon caused a policy on the same property to be issued by the agency that issued the former one. A fire occurred and the Fire Association refused to pay because of the outstanding policy in another company, and Bonds brought suit against it. Trial resulted in a judgment against it. In affirming the judgment, this court used this language:

"It is true that the Bank had the right to protect its security. The mortgage required the mortgagor to insure the property, and this provision would have given the mortgagee the right to take out insurance to protect its security had this been necessary. But this was a secondary right. The primary duty to insure was upon the

mortgagor. It was his duty to take out the insurance and pay the premium."

The effect of the holding was that the policy issued by the bank was invalid, that company having been made a party by cross-complaint of the Fire Association, and the latter's policy valid.

Appellants cite the case of *Townsend* v. *First Fed. Sav. & L. Ass'n,* 153 Fla. 535, 15 So. 2d 199. We think this case is not in point because there the mortgagor took out insurance in a company that did not write the usual form of fire insurance, but a new and untried method, and it was held that the mortgagee's refusal to accept said policy was not arbitrary, but recognized the rule that such discretion in approving companies cannot be exercised "in an arbitrary, unreasonable, and capricious manner." We think this is in line with the holding in our own case above cited. See, also, *Eberich* v. *Solomon,* 112 Conn. 498, 152 A. 823. We, therefore, hold that Cleveland had the right to cause renewal policies to be issued under section 5 of the deed of trust.

Two other contentions are made for a reversal by appellants: (1) That Cleveland made an "agreement designating Smith-Reid-East as the agency to write insurance and renewals during the life of the loans"; and (2) the "question of whether the fiduciary obligation of Jack C. East to those companies would foreclose his right to write insurance policies on the Cleveland property, and would entitle those companies to an injunction restraining him from interfering with their business." Both of these contentions are questions of fact. There were two objections raised to the evidence of Guardian that there was an oral agreement at the outset to the effect that all insurance and renewals over a period of either twenty or twenty-five years should be written by Smith-Reid-East. One was that all prior agreements were merged in the individual or separate deeds of trust, and the other was the statute of frauds, § 6059 of Pope's Digest. We do not enter upon a discussion of these objections, even though they might be well taken, for the

court found as a matter of fact Cleveland "did not make an oral agreement or contract or a written agreement or contract designating Smith-Reid-East Company as the agency through whom such insurance should be written . . ." The evidence thereon is in sharp dispute and we cannot say this finding is against the preponderance of the evidence. The same thing may be said as to the question raised in point 2 above, regarding "confidential information." The court found as a fact that neither Jack C. East nor Cleveland had taken any unfair advantage of or used any confidential or private information of appellants in connection with their own business, and we think the preponderance, if not the undisputed, evidence supports this finding.

The decree is accordingly affirmed.